UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>MICHAEL L. BABICH et al.,<br><br>Defendants. | Criminal No. 16-CR-10343-ADB<br><br>LEAVE TO FILE GRANTED ON<br>JULY 17, 2018 (DKT. NO. 365) |

**DEFENDANTS' RESPONSE TO GOVERNMENT'S SUPPLEMENTAL
MEMORANDUM IN OPPOSITION TO DEFENDANTS'
<u>MOTION TO DISMISS INDICTMENT</u>**

The government's supplemental brief makes one thing clear: It would prefer to abandon the current Indictment and return to the grand jury rather than risk dismissal. But nothing in the government's vague proposal suggests that any superseding indictment would cure the fundamental defects of the current charges. Although the government professes to be "mindful" of the concerns raised by the Court at the July 17, 2018 hearing, it doubles down on its flawed assertion that a rimless hub-and-spoke arrangement is compatible with the existence of a RICO enterprise, which requires both a common purpose and interrelationships among its members. Even if the government manages to "streamline" the Indictment, a second superseding indictment that repeats the errors of the first will face the same legal problems.

Deferring a ruling on Defendants' Motion to Dismiss would prejudice Defendants' efforts to prepare for trial, which is now less than six months away. Instead of being able to prepare their upcoming pretrial disclosures, review thousands of potential trial exhibits, and meet with witnesses, Defendants will have to engage in an additional round of dismissal briefing that—based on the government's submission—will necessarily involve argument on the same issues now ripe for decision. Moreover, since the government clings to a boundless interpretation of RICO that is contrary to Defendants' understanding, the Court's comments at oral argument, and at least 19 decisions on the issue, Defendants have no confidence that the government will properly instruct the grand jury on these issues unless this Court rules on the current motion *before* the government returns to the grand jury.

Thus, Defendants respectfully ask the Court to rule on the pending motion to dismiss, with guidance that clarifies the applicable law for the benefit of all parties. If the government still believes it has a legally viable basis to proceed on the RICO and other counts, it should then seek a properly narrowed second superseding indictment that takes into account the Court's order.

If the Court is not inclined to rule immediately, it should at least inform the government that it will rule by a date certain unless a superseding indictment is returned before then. Defendants suggest that this date be two weeks from today.

1. The government devotes almost all of its supplemental brief to repetition of arguments that the Court has already heard. It seems clear that, while the government may try to adjust the formal presentation and organization of a subsequent indictment, it intends to seek a RICO charge that is comparable in scope to the current one—notwithstanding the government's recognition that the Court already admonished that "the enterprise alleged in the Indictment must have a rim." Gov't Supp. Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Indictment ("Gov't Supp.") at 1, Dkt. No. 371 (July 24, 2018). It is the government's prerogative to disagree with the Court's preliminary conclusion. But the government should not be permitted to preempt a potentially unfavorable ruling from the Court if it has no serious intention of addressing the Court's concerns.[1] The Court has stated—several times—that it has no interest in a 14-week trial of charges that are legally insufficient. *See* 7/17/18 Tr. at 7, 13, 17, 46. Thus, this critical issue requires prompt resolution by the Court.

2. The government again relies on *United States v. Elliott*, 571 F.2d 880 (5th Cir. 1978), a 40-year-old out-of-circuit decision, for the wholly unremarkable proposition that a RICO conspiracy casts a "wider net" than a traditional conspiracy (as the government reminds the reader five times). *See* Gov't Supp. at 5, 6, 8. No one disputes this proposition, as Defendants (and the Court) have acknowledged multiple times. *See, e.g.*, 7/17/18 Tr. at 11. The problem with the

---

[1] Notably, the government's papers suggest that only "some" of the issues "may" be mooted by a superseding indictment. Gov't Supp. at 1. This approach reinforces Defendants' fears that the grand jury was not properly instructed as to the elements of a RICO enterprise and will not be properly instructed on the government's third go-around. *See* Defs.' Reply in Support of Mot. to Dismiss Indictment at 9 n.8, Dkt. No. 345 (July 9, 2018).

2

government's interpretation of *Elliot* is that the government believes the RICO net is infinite, and not subject to meaningful legal constraint. But *Elliott* emphasizes that the court "*still must look for agreement on an overall objective*" that links *all* members of the alleged enterprise. 571 F.2d at 903 (emphasis added); *accord Ryan v. Clemente*, 901 F.2d 177, 180 (1st Cir. 1990) (Breyer, J.). As such, to allege an enterprise, the Indictment must assert facts that show that the disparate practitioners and pharmacies that had bilateral relationships with Defendants are also interrelated in a way that shows they agreed on a common purpose. Whether one calls that a "rim" that connects the various "spokes," or simply an enterprise that meets the Supreme Court's definition in *Boyle v. United States*, 556 U.S. 938 (2009), may be a matter of semantics. But the suggestion that *anything* constitutes a RICO enterprise so long as the government says it does, and that a RICO enterprise is some kind of lesser included concept that is easier to prove than any conspiracy, is neither semantic nor supported by the case law.

As Defendants have already explained (and as the government apparently agrees), the defendants in *Elliott* argued that "while the indictment alleged but one conspiracy, the government's evidence at trial proved the existence of several conspiracies, resulting in a variance . . . ." Gov't Supp. at 2 (citing 571 F.2d at 900); *see also* Defs.' Reply in Support of Mot. to Dismiss Indictment ("Reply") at 7–8, Dkt. No. 345 (July 9, 2018). Accordingly, the issue in *Elliot* was *not* whether (as here) the government had adequately shown the existence of an *enterprise* that encompassed all defendants—a point that the *Elliott* defendants did not challenge. *See* 571 F.2d at 900. Nor did the Court of Appeals in *United States v. Turkette*, 656 F.2d 5, 8 (1st Cir. 1981), or *United States v. Tashjian*, 660 F.2d 829, 834 (1st Cir. 1981), have occasion to consider whether the government in those cases had properly shown the existence of an enterprise. Rather, both cases concerned allegations of improper joinder and, in that different context, cited

*Elliott* for the uncontroversial proposition that RICO permitted the government to cast a "wider net."[2]  In neither *Elliott*, *Turkette*, nor *Tashjian* did the court consider how RICO's "wider net" applies in the context of an alleged enterprise made up of one central actor and multiple outliers who lack any relationships between themselves (i.e., a rimless hub-and-spoke).

More recent cases—after *Elliott* and both pre- and post-*Boyle*—have explained why rimless hub-and-spoke configurations cannot amount to a RICO enterprise.  As *Boyle* recognized, "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates . . . would not be enough to show that the individuals were members of an enterprise." 556 U.S. at 947 n.4.  That means "[t]he parallel conduct of a number of 'spokes,' even through a central 'hub,' is not a RICO enterprise without more—that is, without a 'rim' that connects the spokes." *Abbott Labs. v. Adelphia Supply USA*, 2017 WL 57802, at *5 (E.D.N.Y. Jan. 4, 2017).  These cases recognize that there is a "reasoned distinction" between "insufficient, rimless hub-and-spoke formations . . . and hub-and-spoke configurations in which the spokes coordinated and cooperated such that an enterprise was formed." *Id.* at *5–6; *see also* Reply at 4–5 nn. 3, 4 (collecting cases).

Most cases frame this deficiency in terms of a lack of a "common purpose," *see, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 184 (D. Mass. 2003), or a lack of interrelationships among the spokes, *see, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 173–74 (D. Mass. 2003).  Thus, in asserting that the hub-and-spoke issue is

---

[2] In its initial opposition, the government theorized that these two decisions "cited *Elliott* with approval" and "strongly suggest" that the First Circuit agrees that a rimless hub-and-spoke arrangement would suffice under RICO. *See* Gov't Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Indictment at 14, 15, Dkt. No. 339 (June 22, 2018).  Now, however, the government contends that the First Circuit has in fact "adopted" this purported holding from *Elliott*. *See* Gov't Supp. at 1, 4.  It is unclear how the First Circuit's citation of *Elliott* has become more forceful in the intervening month.

4

ultimately about a failure to plead the core elements of a RICO enterprise, it is not Defendants who are "mix[ing] apples and oranges," but the government. *See* Gov't Supp. at 7. The government mischaracterized Defendants' objection to the RICO count as concerning the number of conspiracies alleged in the Indictment, but the law is clear that rimless hub-and-spoke configurations fail to pass muster under RICO not because multiple conspiracies are alleged, but because they do not possess the structural features that are the "sine qua non" of the RICO enterprise. *Ryan*, 901 F.2d at 180 (quotation omitted).

Finally, although the government again faults Defendants for relying on civil RICO cases, *see* Gov't Supp. at 6, 8, nowhere—in either its opposition or its supplemental brief—does the government contend these cases were wrongly decided or even attempt to engage with the reasoning of these decisions. Rather, the government simply adopts a "civil-is-different" mentality that finds no support in principle or precedent. *See* Reply at 5–6, 16. Indeed, the government's most recent submission confirms that the government believes a RICO claim that would be *dismissed* in a civil context (such as the 19 cases Defendants have cited) is nonetheless sufficient to secure a *conviction* in a criminal context. That is an absurd and indefensible position for the government to take.

3. Even if the Court concludes that it is appropriate to defer ruling on Defendants' motion pending a second superseding indictment, the Court should nonetheless require the government to file any superseding indictment within two weeks, failing which the Court should rule. In a single paragraph, the government professes an intent to "streamline" and "narrow[ ]" the case by "reducing the number of counts." Gov't Supp. at 1. But nowhere amidst these vagaries does the government actually say what it intends to do, nor does it offer any date by which it will do so other than its equivocal commitment that something will happen "over the next few weeks."

*Id.* To prepare their defense, Defendants need fair notice of the scope of the government's allegations (which the Court has already suggested are insufficient, *see, e.g.*, 7/17/18 Tr. at 26–27, 37) and how, if at all, the government's allegations are likely to change. As the court is well aware, trial is less than six months away and substantial pre-trial deadlines are less than three months away. In these circumstances, fairness requires that the government commit to a fixed schedule that will not cause the pending legal dispute to linger and be repeated in another round of briefing and argument to dismiss any additional indictment premised on the same legal theory.

* * *

For all the foregoing reasons and those in Defendants' opening and reply briefs, the Court should dismiss the Indictment pursuant to the Fifth and Sixth Amendments to the Constitution and Rules 7(c) and 12, for lack of specificity and failure to state an offense, or at least put the government on notice that the Court will rule on the pending motion to dismiss in two weeks if a superseding indictment is not returned by then.

Dated: July 26, 2018

Respectfully submitted,

/s/ Joseph Sedwick Sollers, III
Joseph Sedwick Sollers, III
(admitted *pro hac vice*)
wsollers@kslaw.com
Mark Jensen (admitted *pro hac vice*)
mjensen@kslaw.com
King & Spalding LLP
1700 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: (202) 737-0500

William H. Kettlewell (BBO# 270320)
wkettlewell@collorallp.com
Collora LLP
100 High Street
Boston, MA 02110
Telephone: (617) 371-1037

*Attorneys for Michael Babich*

/s/ George W. Vien
George W. Vien (BBO# 547741)
gwv@dcglaw.com
Peter E. Gelhaar (BBO# 188310)
peg@dcglaw.com
Joshua N. Ruby (BBO# 679113)
jnr@dcglaw.com
Donnelly, Conroy & Gelhaar, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Telephone: (617) 720-2880

*Attorneys for Alec Burlakoff*

/s/ Tracy A. Miner
Tracy A. Miner (BBO# 547137)
tminer@demeollp.com
Megan Siddall (BBO# 568979)
msiddall@demeollp.com
Demeo LLP
200 State Street
Boston, MA 02109
Telephone: (617) 263-2600

*Attorneys for Michael Gurry*

/s/ Steven A. Tyrrell
Steven A. Tyrrell (admitted *pro hac vice*)
steven.tyrrell@weil.com
Patrick J. O'Toole, Jr. (BBO# 559267)
Patrick.otoole@weil.com
Weil, Gotshal & Manges LLP
2001 M Street, NW
Washington, D.C. 20036
Telephone: (202) 682-7213

*Attorneys for Richard Simon*

/s/ Peter C. Horstmann
Peter C. Horstmann (BBO# 556377)
pete@horstmannlaw.com
Law Offices of Peter Charles Horstmann
450 Lexington Street, Suite 101
Newton, MA 02466
Telephone: (617) 723-1980

*Attorney for Sunrise Lee*

/s/ Michael Kendall
Michael Kendall (BBO# 544866)
michael.kendall@whitecase.com
Alexandra Gliga (BBO# 694959)
alexandra.gliga@whitecase.com
White & Case, LLP
75 State Street
Boston, MA 02109
Telephone: (617) 939-9310

*Attorneys for Joseph Rowan*

/s/ Beth A. Wilkinson
Beth A. Wilkinson (admitted *pro hac vice*)
bwilkinson@wilkinsonwalsh.com
Alexandra M. Walsh (admitted *pro hac vice*)
awalsh@wilkinsonwalsh.com
Wilkinson Walsh + Eskovitz LLP
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 847-4000

Brien T. O'Connor (BBO# 546767)
brien.o'connor@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
Prudential Tower 800
Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

*Attorneys for Dr. John Kapoor*

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing document will be served on counsel for the government through the ECF system.

                                    /s/ Beth A. Wilkinson
                                    Beth A. Wilkinson
                                    Counsel for Dr. John Kapoor