UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, ) CRIMINAL NO.: 16CR10343-ADB
)
v. )
) **REDACTED FOR PUBLIC FILING**
MICHAEL L. BABICH, et al )
)
)

**GOVERNMENT'S ANSWERS TO COURT ORDER # 612 AND RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE BOAL'S ORDER DENYING DEFENDANT'S MOTION FOR A BILL OF PARTICULARS**

The United States of America hereby answers to the Court's Order Regarding Defendants' Objections To Order Denying Defendants' Motion For A Bill Of Particulars (Dkt.# 612) [hereinafter the "Order"] and opposes the Defendants' Objections to Judge Boal's Order Denying Defendants' Motion For A Bill of Particulars (Dkt. # 566) [hereinafter, the "Motion"]. To date, the United States has disclosed a list of bribes paid as honoraria to each of the eight co-conspirator practitioners (Dkt.#399), a list of approximately 150 calls the government intends to introduce at trial (Dkt.#399), and a list of patients the United States intends to call as witnesses (Ex. #1: Letter to Defense Counsel December 12, 2018). This information, all of which the government was not required to disclose until January 7, 2019, was given to the Defendants in addition to early access to significant Jencks materials (including grand jury transcripts, witness reports, and agent notes).

Nevertheless, the Defendants' Motion seeks an unprecedented Court order, which ignores the black letter limits of Rule 7(f) of the Federal Rules of Criminal Procedure, and which would result in unfair restraint of the Government's ability to present its case. The Defendants' Motion feigns ignorance of the government's case and incorrectly manipulates the plain holdings of

precedent favorable to the government. As such, this Court should affirm the order of United States Chief Magistrate Judge Boal.

## LEGAL STANDARD

A Magistrate's order my only be set aside when the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); see also United States v. Garcia, 983 F.2d 1160, 1163 (1st Cir. 1993).

## ARGUMENT

### A. The Breadth and Structure of the Defendant's Motion Require Close Scrutiny

1. Defendants' Seek Particulars that Broadly Exceed The Requirements of Rule 7(f).

a. Defendants Seek a List of every Alleged Act Committed

An indictment is sufficiently particular if it "elucidates the elements of the crime, enlightens a defendant as to the nature of the charge against which she must defend, and enables her to plead double jeopardy in bar of future prosecutions for the same offense." Sepulveda, 15 F.3d at 1192. Here, much of the Defendants' Motion does not challenge notice of the alleged crime. Rather, the Defendants assert that they cannot understand the *nature* of the alleged crime without a detailed, binding list of each act the government will use as a manner and means in the alleged conspiracy. The Motion is unprecedented and plainly not contemplated by the requirements of Rule 7(f).

In support of their incredibly broad Motion, the Defendants cite United States v.Davidoff, 845 F.2d 1151, 1154 (2d. Cir. 1988). The Defendant in Davidoff was charged with RICO conspiracy and with substantive counts of extortion. Id. at 1153. The RICO conspiracy count in Davidoff alleged that it was part of the conspiracy to commit extortion offenses and that these offenses "included, but were not limited to," the violations set forth in the

substantive counts of the indictment. The substantive counts alleged extortion of one, specific company. Id. As such, the Indictment led the Defendants to believe that the extortion involved a single company. Thereafter, *during jury selection*, the government turned over Jencks materials that alleged extortion of a different company. Id. at 1155.

Neither the Indictment, nor the discovery in this case, are comparable to Davidoff. Here, the SSI tediously explains that the Defendants participated in a nationwide racketeering conspiracy. Using the Glecier[1] format, the SSI describes the conspiratorial agreement, the types of racketeering activity, and the object of the alleged conspiracy. SSI at ¶¶23-26. Paragraph 24 of the SSI alleges that the Defendants conspired to commit five types of racketeering activity (1) mail fraud in violation of 18 U.S.C. §1341, (2) honest services mail fraud in violation of 18 U.S.C. §§1341 and 1346; (3) offenses involving the distribution of controlled substances in violation of 21 U.S.C. § 84l(a)(l) (a)(1); (4) wire fraud in violation of 18 U.S.C. §1343; and (5) honest services wire fraud in violation of o18 U.S.C. §§ 1343 and 1346.

Significantly, the alleged bribes, misleading statements, and efforts to subvert the DEA, are not alleged as crimes, but as the manner and means used to accomplish each type of alleged racketeering activity. The SSI leaves no doubt about this distinction. The SSI explicitly alleges that the Defendants used bribes as a manner and means to further *each* of the types of racketeering activity alleged in paragraph 24. SSI at ¶27. Likewise, the SSI alleges that to further *each* type of racketeering activity described in paragraph 24, the Defendants instructed Insys employees to make false and misleading representations and omissions to insurers. Last,

---

[1] The Glecier Court rejected a Davidoff challenge, holding that, "[t]he extent of pre-trial discovery is the primary factor that distinguishes this case from United States v. Davidoff, 845 F.2d 1151 (2d Cir.1988)…." United States v. Glecier, 923 F.2d 496, n.5 (1991).

the SSI alleges that to further *each* type of racketeering activity described in paragraph 24, the Defendants engaged in conduct to prevent detection of their illegal activities by the DEA and others.

From the outset of this case, the United States has endeavored to provide the Defendants with comprehensive, indexed, and searchable, discovery. Grand Jury materials, including the sworn testimony of many of the government's prospective trial witnesses, were provided to the Defendants before they were arraigned. The United States has turned over reports of interview, as well as the handwritten notes taken during the interview, without consideration as to whether the government will call the witness at trial. Moreover, when the government has learned new information, it has promptly provided it to the Defendants. Any comparison to the Davidoff case, either the form of the indictment or the timing of Jencks discovery, is incongruous. The Defendants know, and have known for some time, exactly what the Government knows. As such, the Defendants' Motion does not seek notice. The Defendants Motion strategically ask this Court to restrain the Government's case at trial.

b. The Defendants Motion Seeks to Constrain the Government's Proof.

Defendant's Motion begins by asserting that they seek discrete categories of information. Dkt. #566, at 3. There is nothing discreet, however, about what the Defendants have requested. It is true that the Defendants have appealed Judge Boal's Order regarding four "categories" of information. Dkt. 566 at 3. The Defendants Motion lists multiple requests for two of the categories of information. Combined, the Defendants have sought 8 different types of particulars. Dkt. # 500. Moreover, the information sought is not merely an effort to understand

the charge, but an intentional strategy to force the government to list witnesses and evidence that it will use at trial. And, because the Defendants seek to learn such information pursuant to Rule 7(f), a Court order allowing their Motion would be an unprecedented restraint on the government at trial.

There is a plain difference between particulars produced required pursuant to Rule 7(f) and trial evidence. Under Rule 7(f) the only relevant question is whether the Defendants, "in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause." United States v. Sepulveda, 15 F.3d 1161, 1192-93 (1st Cir. 1993). Demands for exhaustive lists of, and specific detail regarding, the government's trial evidence most assuredly do not meet this test. See e.g. United States v. Godfrey, No. 11-cr-10279- RWZ, 2013 WL 1414887, at *1 (D. Mass. Apr. 5, 2013); United States v. Stryker Biotech LLC, No. 09-cr-10330-GAO, 2010 WL 2900684 at *3 (D. Mass. Jul. 21, 2010). As such, Defendants' fail to demonstrate that Judge Boal's Order was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

In addition to failing to prove that Judge's Boal's Order was contrary to law, the Defendants' Motion seeks to obtain a troubling holding from this Court. The holding and reasoning in United States v. Ackerly, No. 16-cr-10233-RGS, 2017 WL 5484673 (D. Mass. November 15, 2017) illustrates what the Defendants are attempting to accomplish. In Ackerly, the government had identified, while a motion for the bill of particulars was pending, the "bulk" of the bribes, and further agreed to prepare an exhibit list prior to trial "specifying the universe of bribes." Ackerly, 2017 WL 5484673 at *3. Judge Stearns "accept[ed] this offer as reasonable resolution of the issue," but, in doing so, made clear that the request for particulars was denied:

> [B]ecause a bill of particulars strictly confines the government's proof at trial within its four corners, judges are reluctant to order particulars which, in their requirement for detail or otherwise, amount to the imposition of a straitjacket on the prosecution. Nor is a bill of particulars a proper means of extracting a résumé of the evidence that the government intends to offer at trial. Rather, the appropriate use of the bill of particulars is to ensure that a defendant is given reasonable notice of the nature and character of the crimes charged to avoid undue surprise or difficulty in preparing a defense, or to avoid double jeopardy. As the hemming qualifications suggest, bills of particulars are rarely granted, at least in federal practice.
>
> At the core of this motion is the effort of the defendants to discover the specific bribes and inflated invoices the government alleges were part of the conspiracy and intends to introduce at trial. *To state the issue is to exclude a bill of particulars as an appropriate device to achieve the result that defendants desire.*

Ackerly at *3 (emphasis added, internal citations omitted).

Much like Ackerly, the pre-trial Order of this Court plainly recognizes that safeguarding fair notice of evidence should not preclude room for amendment. See Dkt. #277. Previously, this Court set January 7, 2019, as the date upon which the Government must provide the Defendants with lists of witnesses and exhibits it intends to offer in its case in chief. Dkt. # 277 at ¶P 5-6. The Order explicitly recognizes the possibly that the Government may seek to amend its witness and exhibit lists. Dkt. # 277 at ¶P 5 (ordering that if the government should form an intent to call any other witness, or introduce other exhibits, it "shall promptly notify the defendants…."). The breadth of the Defendant's instant request would eliminate the Court's previous order.

2. The Defendant's Motion Does Not Accurately Describe the Government's case.

The Defendant's Motion misapprehends the difference between proving a conspiracy and proof of an unindicted co-conspirator. Much of the Defendants factual argument, as well as their use of case law, relies upon acceptance of this misapprehension.

The United States alleges a conspiracy amongst the Defendants and others. Proof of a conspiratorial agreement in this case necessarily includes proof of attempts to accomplish the

manner and means described above. Put simply, efforts to bribe practitioners and make false and misleading representations and omissions are evidence of the alleged conspiracy, whether or not those efforts were successful. United States v. Morosco, 822 F.3d 1, 9 n.2 (1st Cir.), cert. denied, 137 S. Ct. 251, 137 S. Ct. 403 (2016). Nevertheless, evidence that the Defendants *succeeded* in bribing certain practitioners, and in making false and misleading representations and omissions to insurers and patients, is relevant proof that a conspiracy in fact did exist. See, e.g. United States v. Guadagna, 183 F.3d 122, 130 (2d Cir.1999) ("'[W]hen the "necessary result" of the ... scheme is to injure others, fraudulent intent may be inferred from the scheme itself.' ") (quoting United States v. D'Amato, 39 F.3d 1249, 1257 (2d Cir. 1994); United States v. Collier, 478 F.2d 268, 272 (5th Cir. 1973) (quoting Linder v. United States, 268 U.S. 5, 18 (1925))(circumstances surrounding prescription of a controlled substance are relevant to a determination of whether the prescriptions at issue fell outside the bounds of legitimate medical practice).

To prove the alleged criminal agreement, the Government intends to offer evidence of both effort and success in this case. The Defendant's Motion seeks to constrain the Government's case to the latter. The United States has given notice of 13 co-conspirator practitioners. The government does not intend to offer direct proof of other coconspirator practitioners, such as co-conspirator declarations. However, to be clear, the United States will seek to offer proof that the Defendants and their co-conspirators attempted to bribe additional medical professionals. As the government has made clear from the inception of this prosecution, the criminal agreement was not limited to the 13 co-conspirator practitioners. To focus the jury's attention, the United States will highlight the effort and successes with the 13 co-conspirator practitioners, and will demonstrate the criminal agreement to bribe and influence additional

practitioners. Agreement to, and attempts to, bribe practitioners is evidence of the offense here, it is not necessary for those additional practitioners to be co-conspirators, or named co-conspirators, because the government does not intend to demonstrate their subsequent conduct – merely the scope and nature of the criminal agreement in the first instance. For reasons described herein, none of this evidence can possibly be said to surprise the Defendants.

B. The Defendants Requests

1. Requests 1-4.

The first four requests made by the Defendant appear under a heading, "Alleged Honest Services Fraud Scheme." Dkt. # 500. As described above, the government has alleged that bribes, fraudulent statements, and efforts to subvert suspicious activity reporting are each manner and means used by the defendants to accomplish all of the alleged racketeering activity, including but not limited to honest services fraud.

a. Request 1: Forms of Bribes.

The Defendants seek particulars regarding the forms of bribes or kickbacks that the government intends to allege at trial. Dkt.# 500 In its Order, dated December 14, 2018, the Court requested that the United States confirm whether it intends to introduce evidence or argument concerning "[f]orms of alleged bribes or kickbacks other than (i) honoraria; (ii) services of Insys employees; (iii) salaries of office staff; (iv) sham dinners; or (v) volume discounts to pharmacies. Dkt. # 612 at 2.

The United States intends to limit its evidence to the forms of bribes described above. In an abundance of caution, the government makes two points.

First, there is evidence that in some cases the conspirators supplemented the bribes with sexual conduct and/or trips to strip clubs. For example, two witnesses observed Defendant Lee

engaged in a lap dance with one of the co-conspirator practitioners. The evidence could be characterized as inducement, but also serves to demonstrate that the defendants knowingly did not engage key opinion leaders.

Second, the form of sham meals varied significantly. Some were only attended by friends, family, or co-workers/employees of the prescriber. Some were not held at all. For example, Defendant Rowan was recorded teaching his sales reps how to falsely bill caterers in order to gain cash for tangible gifts to give practitioners. See Transcript of Conversation at National Sales Meeting, April 19, 2013, attached as Exhibit 2. Some bribes took the form of food from restaurants owned by the practitioner or by his spouse.

Evidence proving each form of bribe or kickback was provided in discovery. The allegations described above regarding the conduct of Defendants Lee and Simon, were the subject of grand jury testimony.

b. Request 2: Sham Speaker Events

The Defendants seek particulars regarding the speaker program events that the "government intends to allege at trial lacked any legitimate marketing or educational component (i.e., were shams)." Dkt.# 500. In its Order, dated December 14, 2018, the Court requested that the United States confirm whether it intends to introduce evidence or argument of "speaker program events concerning practitioners other than the thirteen alleged co- conspirator practitioners identified in the Second Superseding Indictment and the September 25, 2018 discovery letter (hereinafter, the "thirteen alleged co-conspirator practitioners")." Dkt. # 612.

The United States will seek to offer the testimony of witnesses that sham dinner events were generally part of the alleged scheme. That sham dinners occurred, or were contemplated,

as part of the nationwide scheme is evidence of the criminal agreement of the Defendants and co-conspirators.

As described above, Defendant Rowan instructed his sales reps to use sham catering. A recording of this conversation was provided in discovery and a recently completed transcript was also disclosed. In addition, Defendant Lee gave instruction to four different sales reps and or managers condoning the use of sham dinners. Reports, sworn testimony, and texts regarding this matter were provided in discovery. Defendant Simon gave instruction to a sales rep to purchase food from a store owned by a targeted practitioner.

Accordingly, the government intends to offer evidence of such sham dinners beyond those associated with the 13 co-conspirator practitioners. The government notes out of an abundance of caution that in many cases, co-conspirators in this case were paid honoraria bribes for more than one engagement per week over extended periods of time, in most cases years. As the Defendants are aware, the statements of Insys employees, as well as co-conspirator practitioners, provided to Defendants in discovery establish that witnesses have difficulty providing the specifics of each speaker program. The government has provided all schedules, speaker honoraria payments, sworn testimony, email, sign-in sheets, receipts, program evaluations, and reports of interview with attendees in its possession regarding each of the eight alleged co-conspirator practitioners identified in the SSI. As such, the Defendants are more than prepared to cross-examine the government's witnesses at trial. In any event, a bill of particulars is not intended to be a discovery device. <u>United States v. Cadden</u>, Criminal No. 14-10363-RGS, 2015 WL 13683815, at *2.

c. Request 3: Office Staff Salaries.

The Defendants seek particulars regarding the "“office staff” whose salaries the government intends to allege at trial that Insys paid as a bribe or kickback, other than those identified in SSI paragraphs 56-58." Dkt. # 500. In its Order, dated December 14, 2018, the Court requested that the United States confirm whether it intends to introduce evidence or argument of "[o]ffice staff salaries allegedly paid as bribes or kickbacks to anyone other than the thirteen alleged co-conspirator practitioners." Dkt. # 612.

The government intends to introduce evidence that it was generally part of the agreement to use the ABL program as a way to hire and pay friends and staff of practitioners. The SSI identifies the services of three Insys employees that the government alleges were paid as bribes to three of the eight co-conspirator practitioners identified in the Indictment. SSI at ¶¶56-58. The United States intends to prove the agreement relating to this form of bribery using evidence related to the three employees identified in the SSI in its case in chief. The United States reserves the right to further examine witnesses regarding the specifics of additional allegations should the defense open the door.

d. Request 4: Administrative Tasks

The Defendants seek particulars regarding the "Insys employees whom the government intends to allege at trial performed "administrative tasks" as a bribe or kickback, and the nature of the administrative tasks that the government claims were bribes or kickbacks." Dkt. # 500. In its Order, dated December 14, 2018, the Court requested that the United States confirm whether it intends to introduce evidence or argument of "[s]ervices of Insys employees allegedly performed as bribes or kickbacks to anyone other than the thirteen alleged co-conspirator practitioners..." Dkt. # 612.

The government intends to introduce evidence that most of the sales managers and sales representatives employed by Insys received direction, and at times carried out their instructions, to fill out prior authorization paperwork, including "opt-in" forms for practitioners, and at times contact insurers. The United States intends to limit specific allegations of this part of the scheme to the 13 co-conspirator practitioners. The United States reserves the right to examine witnesses regarding this conduct should the defendants open the door.

As described herein and below, the United States has provided ample notice of the nature of its proof regarding the subject matter of requests 1-4. Ordering particulars related to these requests would unfairly restrain the government for reasons argued above. As such, the Appeal of Judge Boal's Order on this request should be denied.

2. Request 7.

The Defendants have sought particulars regarding patient harm. The Defendants original "Request 7" sought particulars regarding the "the specific patients, *if any*, that the government intends to allege at trial were ***tangibly harmed*** by the alleged honest services fraud scheme." Dkt. # 500 (emphasis added). In their renewed request for a bill of particulars, the Defendants requested, "the specific patients, *if any*, the government intends to allege at trial were ***tangibly harmed*** as a result of being prescribed Subsys." Dkt. # 500 (emphasis added). Here, the Defendants' appeal of Judge Boal's Motion to this court asserts that patient testimony is irrelevant. Specifically, the Defendants have argued to this Court that,

> [r]equest 7 asks the government to identify the specific patients that the government intends to argue at trial were ***tangibly (i.e., physically or medically) harmed*** by Defendants' alleged RICO conduct 537, at 7…. The question posed by Defendants' request, however, is not whether the government must prove patient harm, but whether it will suggest it to the jury even though it is ***irrelevant*** to the case.

Dkt. # 566 at 4 (emphasis added).

In its Order, dated December 14, 2018, the Court requested that the United States confirm whether it intends to introduce evidence or argument regarding"[p]atients who were allegedly harmed as a result of taking Subsys or by the scheme to illegally distribute Subsys." Dkt. # 612.

The Defendants argument regarding this request omits significant facts, leading this Court to believe that the United States has changed its position regarding patient testimony at trial. This is not accurate. The Defendants have previously asserted to this very Court that, in order to prove honest services fraud, the United States *must* prove tangible harm to patients. Defendants Memorandum of Law In Support Of Motion To Dismiss, ("Def. Mem. 1") Dkt. # 318, at 39 (asserting that the United States had failed to meet the requirements of United States v. Jain, 93 F.3d 436 (8th Cir. 1996)). In fact, the Defendants recently doubled down on that very argument to this Court:

> [I]t takes more than a purported bribe to implicate honest services fraud. Where a doctor gives the patient the exact medication he or she needs, it can hardly be said that the doctor breached his fiduciary duty to prescribe medication for a legitimate medical purpose. See [United States v. Jain, 93 F.3d 436, 441-442 (8th Cir. 1996)… (reversing an honest services fraud conviction because there was "no evidence that any patient suffered tangible harm" as a result of the kickback scheme).

Defendants Memorandum of Law In Support of Motion To Dismiss RICO Predicate Charges Of The Second Superseding Indictment ("Def. Mem. 2") Dkt. #514, at 22.

There is a plain difference between meeting the requirements of Rule 7(f) and proving a case beyond a reasonable doubt at trial. The United States has asserted, and continues to assert, that because the SSI alleges a conspiracy it does not have to prove any patient harm in order to prevail in this case. Such black letter law is particularly relevant when the Defendants have moved to dismiss for failure to allege tangible patient harm. Equally important, a bill of particulars is not supposed to be used to force the government to produce a witness list. The

United States has never informed any Court, nor the Defendants, that it does not intend to call patients at trial in this case – it does.

To be sure, the Defendants assertions regarding United States v. Jain, 93 F.3d 436, 441-442 (8th Cir. 1996) create an appealable issue and, therefore, must be addressed at trial. The Defendants Jain argument, however, is not the only reason that evidence of patient health is relevant proof at trial. Evidence of patient medical conditions before, during, and after treatment with Subsys places the conspiracy in context and is also admissible as proof of both the alleged fraud and the alleged illegitimacy of prescriptions. As such, on December 12, 2018, nearly four weeks before it was required to do so, the United States disclosed the names of the nineteen patients it may call at trial in this case.[2] The government anticipates that these witnesses will testify regarding the details of their health before, during, and after taking Subsys. In addition, these witnesses will also describe their interaction with the practitioner that prescribed the drug. The United States has turned over all reports, patient records, calls and medical records in its possession related to these witnesses. It should be noted that all of the listed patients' names appeared in discovery previously provided to the Defense. Each of these witnesses was a patient of a practitioner alleged to be a co-conspirator in this case.

As described herein and below, the United States has provided notice of the nature of its proof regarding the subject matter of request number 7. Ordering particulars related to this request would unfairly restrain the government for reasons argued above. As such, the Appeal of Judge Boal's Order on this request should be denied.

---

[2] The United States has preserved the right to call each of the witnesses disclosed, but will likely call significantly fewer at trial.

3. Request for Particulars Regarding Alleged Insurance Fraud Scheme.

The Defendants seek particulars regarding, "any allegedly false, misleading, or otherwise fraudulent communications between Insys and insurance companies or pharmacy benefit managers that the government intends to allege at trial, other than the 154 telephone calls listed in its disclosure of August 21, 2018." Dkt. # 500. In its Order, dated December 14, 2018, the Court requested that the United States confirm whether it intends to introduce evidence or argument about. "[p]rior authorization telephone calls other than the 154 prior authorization telephone calls identified on the August 21, 2018 Bill of Particulars" Dkt. # 612.

The government intends to offer exhibits and the testimony regarding each of the fraudulent means and omissions employed to obtain prior authorization described in the SSI. Specifically, the testimony will include the instructions, and methods, discussed, ordered, and implemented by the Defendants and co-conspirators. See SSI at ¶¶ 63-73. In the 28-day letter that followed the SSI, the government informed the Defendants that, "while it reserves the right to amend the list," it anticipates relying upon the approximately 150 calls provided to the defense as part of the FSI bill of particulars. That remains the case. It should be noted that the government intends to elicit testimony, and introduce exhibits, demonstrating the full scope of the criminal agreement, and its implementation. The government will rely upon the recordings previously identified, but does not intend to sanitize witness testimony to make it appear falsely to the jury that these are the only calls in furtherance of the schemes put in place by way of the criminal agreement. If the government supplements the list of calls, it intends to do so (a) on or before the January 7, 2019 deadline for exhibits, and (b) only if the call regards one of the 19 patients identified as a potential patient witness in the government's December 12, 2018 letter to the Defense.

As described herein and below, the United States has provided notice of the nature of allegations of insurance fraud. Ordering particulars related to this request would unfairly restrain the government for reasons argued above. As such, the Appeal of Judge Boal's Order on this request should be denied.

4. Request: Particulars Regarding the Alleged CSA Predicate Act

The Defendants sought particulars regarding a number of matters related to the Controlled Substances Act. Dkt. # 500. The Defendants appeal of Judge Boal's order appears to focus on a list of patients the government intends to call at trial.[3] That request is addressed above; however, the Defendants did previously seek, "[t]he manner and means by which Defendants or their alleged co-conspirators allegedly sought to impair, impede, or obstruct the Drug Enforcement Administration, other than the allegations in SSI paragraphs 72 and 73." In its Order, dated December 14, 2018, the Court requested that the United States confirm whether it intends to introduce evidence or argument of, "specific shipments or prescriptions of Subsys that were allegedly in violation of the Controlled Substance Act." Dkt. # 612.

First, the United States will offer in evidence that prescriptions written for some of the patient witnesses described in its December 12, 2018 letter were not necessary. Reports describing interviews with these witnesses have been disclosed. Further, it is anticipated that

---

[3] For the first time, the Defendants assert that they intend to have an expert review patients files. Dkt. # 566, at 8-9. Despite having a list of 150 calls, as well as numerous patient files, interview reports, and insurance records, **the Defendants have never given notice of expert opinion related to any patient or any call.** By email dated October 10, 2018, counsel for Kapoor recognized the government intends to call patients. See Email from Kosta Stojilkovic attached as Exhibit 3. Now the Defendants assert – as a tactic -- they may have been prejudiced, see Dkt. # 566, at 9. If the defense experts have reviewed patient files prior to the Government's December 12, 2018, letter, then their testimony regarding those records or calls should be excluded for failure to comply with Rule 16 and with the Court's disclosure dates. In the alternative, the government requests a voir dire of each proposed Defense pain management experts regarding what records they reviewed and when they received them.

[REDACTED] an [REDACTED] ill testify that they prescribed Subsys for patients that did not need the drug because they were bribed.

Second, paragraphs 72 and 73 of the SSI allege manner and means used by the Defendants and their co-conspirators to conceal each of the types of racketeering activity alleged in paragraph 24 of the SSI. See SSI at ¶ 71. The United States does not allege, nor will it argue, that the activity described in paragraphs 72 and 73 of the SSI violated the C.S.A. Rather, the United States will offer proof that defendants sought to subvert suspicious activity caps/thresholds imposed by wholesalers seeking to comply with the C.S.A. regulations. This evidence is relevant as proof that the Defendants sought to shield certain co-conspirator practitioners from the scrutiny of the DEA. It is also proof that those practitioners were not being paid honoraria as key opinion leaders.

As described herein and below, the United States has provided adequate notice regarding the nature of its proof of the alleged CSA predicate act. Ordering particulars related to this request would unfairly restrain the government for reasons argued above. As such, the Appeal of Judge Boal's Order on this request should be denied.

5. Request 8: Venue.

The Defendants seek particulars regarding, "the acts in Massachusetts that the government intends to allege at trial as being in furtherance of the alleged RICO conspiracy (*i.e.*, the acts in this District that allegedly sought to advance the RICO conspiracy, as opposed to legitimate business conduct or unrelated conduct)." Dkt. # 500.

On its face, the request exceeds the requirements of Rule 7(f). The Defendants, however, assert that the United States must prove that "an act specifically intended to further

the unlawful RICO conspiracy occurred in the District of Massachusetts." Dkt. # 566, at 9. Put simply, the Defendants argument directly misapprehends the law.

First, the Defendants reliance on, Whitfield v. United States, 543 U.S. 209, 218 (2005), profoundly misapprehends the Supreme Court's ruling. The Whitfield Court analyzed the a permissive venue provision in a money laundering statute. Neither the case, nor the statute at issue, stand for the proposition that the defense asserts. To the contrary, it is settled that "in a conspiracy case venue is proper in any district in which an act in furtherance of the charged conspiracy has taken place, even if a particular coconspirator was not himself physically present in that district." United States v. Santiago, 83 F.3d 20, 25 (1st Cir.1996). It is also long settled that specific acts in the district of prosecution need not be unlawful to constitute overt acts giving rise to venue in the District of Massachusetts. See United States v.Medina, 761 F.2d 12, 15 (1st Cir. 1985). Moreover, venue for RICO offenses lies in any district where the RICO enterprise conducted business. See United States v. Pepe, 747 F.2d 632, 664 n.56 (11th Cir. 1984); United States v. Aiken, 76 F. Supp. 2d 1346, 1349-51 (S.D. Fla. 1999) (venue appropriate where, "the activities of the enterprise are alleged to touch a number of districts across the United States, including [the District where the case prosecuted]."); United States v. Napolitano, 552 F. Supp. 465, 482 (S.D.N.Y. 1982) (denying motion to transfer venue on ground that certain acts took place outside the Southern District because "[t]he government alleges that the criminal enterprise which the indictment charges, operated in this district").

Last, the United States has provided discovery that includes evidence that Insys sold Subsys in Massachusetts, that Insys employees worked in the District, and faxed and emailed information to corporate headquarters from the District.



As described herein and below, the United States has provided adequate notice regarding the nature of its proof of venue. Ordering particulars related to this request would unfairly restrain the government for reasons argued above. As such, the Appeal of Judge Boal's Order on this request should be denied.

## CONCLUSION

For the above reasons, the United States respectfully requests that the Court deny the defendants' Appeal and affirm Chief Magistrate Judge Boal's Order.

ANDREW E. LELLING
United States Attorney

Dated: December 18, 2018 By: /s/ *K. Nathaniel Yeager*
K. NATHANIEL YEAGER (BBO # 630992)
DAVID G. LAZARUS (BBO #624907 )
FRED WYSHAK, JR. (BBO #535940)
Assistant U.S. Attorneys
One Courthouse Way, Ste. 9200
Boston, MA 02210
(617) 748-3100
david.lazarus2@usdoj.gov
nathaniel.yeager@usdoj.gov
fred.wyshak@usdoj.gov

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *K. Nathaniel Yeager*
K. Nathaniel Yeager
Assistant U.S. Attorney

Dated: December 18, 2018