1                          UNITED STATES DISTRICT COURT
                            DISTRICT OF MASSACHUSETTS
2

3

4     UNITED STATES OF AMERICA,          )
                                         )
5     vs.                                )  Criminal Action
                                         )
6     ALEC BURLAKOFF,                    )  No. 16-10343-ADB
                         Defendant       )
7                                        )
                                         )
8                                        )

9

10    BEFORE:   THE HONORABLE ALLISON D. BURROUGHS

11
                                SENTENCING
12

13

14

                  John Joseph Moakley United States Courthouse
15                          Courtroom No. 17
                            1 Courthouse Way
16                          Boston, MA 02210

17

                            January 23, 2020
18                           10:06 a.m.

19

20

21

22

23                        Valerie A. O'Hara
                         Official Court Reporter
24        John Joseph Moakley United States Courthouse
                  1 Courthouse Way, Room 3204
25                       Boston, MA 02210
                  E-mail: vaohara@gmail.com

1    APPEARANCES:

2    For The United States:

3        United States Attorney's Office, by FRED M. WYSHAK, JR.,
     ASSISTANT UNITED STATES ATTORNEY, K. NATHANIEL YEAGER,
4    ASSISTANT UNITED STATES ATTORNEY, and DAVID G. LAZARUS,
     ASSISTANT UNITED STATES ATTORNEY, 1 Courthouse Way, Suite 9200,
5    Boston, Massachusetts  02110;

6    For the Defendant:

7        Donnelly, Conroy & Gelhaar, LLP, by GEORGE W. VIEN, ESQ.,
     and PETER E. GELHAAR, ESQ., 260 Franklin Street, Boston,
8    Massachusetts 02110.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>PROCEEDINGS</u>

1

2          THE CLERK:  This is Criminal Matter Number 16-10343,

3    United States vs. Alec Burlakoff.

4          Will counsel identify themselves for the record.

5          MR. WYSHAK:  Good morning, your Honor, Fred Wyshak,

6    Nat Yeager and Dave Lazarus for the United States.

7          MR. VIEN:  Good morning, your Honor, George Vien and

8    Peter Gelhaar for Mr. Burlakoff, who is here in the courtroom

9    with us.

10:06AM 10          THE COURT:  We are here for Mr. Burlakoff's

11    sentencing.  In preparation of the sentencing, I have read and

12    received the following:  The pre-sentence report as revised on

13    January 16th, the defendant's sentencing memorandum dated

14    12-18, the government's consolidated sentencing memorandum,

15    which is dated 12-18, and the motion they have filed on behalf

16    of Mr. Burlakoff.

17          It's Docket Number 1079, and that is granted, 15

18    letters on behalf of the defendant, including one from his

19    doctor, which I thought was particularly amazing as far as

10:07AM 20    these letters go, and all the restitution and forfeiture

21    material that's been filed by everyone throughout the case.

22          My understanding is we're going to defer restitution

23    and forfeiture today?

24          MR. VIEN:  Yes, your Honor, but we basically have an

25    agreement on the forfeiture number, but I have to provide some

1    documents to the government so they can verify the number, but

2    I don't expect that to be an issue.

3         THE COURT:  All right.  So we will enter restitution

4    and forfeiture on the J & C, forfeiture to encompass the

5    proceeds, which I'm assuming, Mr. Lazarus, the methodology is

6    going to be the same as what we've been using?

7         MR. LAZARUS:  Yes, your Honor.

8         THE COURT:  I'm sure you all have been keeping abreast

9    what has been going on here, but it's basically the

10:08AM 10   compensation and the exercise of the shares minus the taxes.

11   The government, I think, you're going to maintain your

12   objection on the tax credit for Mr. Burlakoff?

13        MR. LAZARUS:  Yes, your Honor, all the same

14   objections, and I'll just incorporate my prior record, if I

15   may.

16        THE COURT:  Yes, that's fine.

17        MR. LAZARUS:  Thank you.

18        THE COURT:  I'm anticipating that you'll provide my

19   with two numbers?

10:08AM 20        MR. LAZARUS:  Yes, your Honor.

21        THE COURT:  I want a finding on the record the number

22   that I'm going to impose and the number that I would impose if

23   the government had prevailed on the argument.

24        MR. LAZARUS:  Yes, your Honor.

25        THE COURT:  Are you clear on that, Mr. Vien?  I know

1    he's heard it a number of times.

2        MR. VIEN:  I've heard it once or twice, your Honor.

3    We understand the methodology, and we basically shared our

4    numbers with the government based on your methodology, so I

5    don't anticipate a big problem on this.

6        THE COURT:  Okay.  But you understand they're

7    maintaining their objection to it?

8        MR. VIEN:  I understand that.

9        THE COURT:  Which is why it will be the two numbers.

10:09AM 10   MR. VIEN:  The two numbers, I get it, thank you.

11       THE COURT:  So when the Court of Appeals gets to your

12   47th issue, we'll know how they feel on that one.

13       All right.  Is there anything else I should have

14   received from probation?

15       PROBATION OFFICER:  No, your Honor.

16       THE COURT:  Has anything been withheld from the

17   report?

18       PROBATION OFFICER:  No, your Honor.

19       THE COURT:  How about the government, do I have

10:09AM 20   everything?

21       MR. WYSHAK:  Yes, your Honor.

22       THE COURT:  Defense?

23       MR. VIEN:  Yes, your Honor.

24       THE COURT:  Okay.  Mr. Vien or Mr. Gelhaar, have you

25   had an opportunity to review the pre-sentence report?

1          MR. VIEN:  We have, your Honor.

2          THE COURT:  Have you gone over it with your client?

3          MR. VIEN:  Yes, we have.

4          THE COURT:  Mr. Burkaloff, have you had enough time to

5    review the pre-sentence report?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And have you had enough time to review it

8    with your counsel?

9          THE DEFENDANT:  Yes, your Honor.

10:09AM 10          THE COURT:  As has been my practice in this case,

11   there's many objections to the pre-sentence report, and it is

12   my intention to resolve the objections that need to be resolved

13   for the guideline calculation in this case.  I take a note of

14   all the others, I've read them, I understand them.  It is not

15   my intention to rule on them unless there is a specific

16   objection that someone would like ruled on, in which case I'll

17   rule on it.

18          The objections that I am going to rule on right now,

19   the government's objection Number 7, which has to do with

10:10AM 20   whether we start with six points or seven points as the base

21   offense level, I've adopted probation's rationale on that and

22   confirmed myself that that guideline does not specifically

23   reference the offense conduct, so we'll start with the base

24   offense level of 6.

25          The government's 10th objection, they're looking for

1    two points for the risk of bankruptcy and the reckless

2    disregard for safety.  I'm not going to impose the bankruptcy

3    enhancement, but I am going to impose the other one, which is

4    the reckless disregard for the safety, so that's two points.

5         The government has an objection Number 11 that I think

6    is resolved, but it has to do with the maximum fine, which do

7    we now agree it's $250,000?  It's only one count in this case,

8    right, so just the 250,000 maximum for a fine?

9         MR. LAZARUS:  Your Honor, I think we take the position

10:11AM 10   because it was a guilty plea and not a jury verdict,

11   *Southern Union* would not apply, and so I think that our

12   objection because of the guilty plea is that the maximum fine

13   should be twice the gross gain or loss.

14        THE COURT:  Okay.  What about the pre-sentence report

15   in this case still has all the calculations as to the drug

16   trafficking offense, the CSA?  What is the government's view on

17   that in terms of the guideline calculation?  I was assuming we

18   would disregard it consistent with the other cases but what

19   Mr. Lazarus just said.

10:11AM 20        MR. WYSHAK:  I think out of fairness, we should

21   disregard those calculations.  I think that I've seen it happen

22   in other cases where after a jury verdict, defendants were

23   acquitted, courts would not impose the sentence for the

24   acquitted conduct on the cooperating witness who came forward

25   and pled guilty.  I don't really think it affects the

1    guidelines to any significant degree.

2         THE COURT:  It does affect the guidelines because --

3         PROBATION OFFICER:  It does.

4         THE COURT:  -- there's two additional points for the

5    grouping.

6         MR. WYSHAK:  Right, but in light of the government's

7    motion, I think that it's academic.  In calculating the

8    guidelines, I guess you can add them to the score, the total

9    offense level, if you think it's appropriate.

10:12AM 10         THE COURT:  I'm going to let Ms. Golus speak on that.

11    I was going to not count it because I agree with you that it's

12    a fairness issue, but given what Mr. Lazarus just said about

13    the impact of a plea agreement --

14         MR. YEAGER:  We would ask the Court without waiving

15    any concern about the Court's ruling on Rule 29 to waive that

16    issue with regard to Mr. Burlakoff, to not count the two

17    points with respect to Mr. Burlakoff.

18         THE COURT:  What about the fine range?

19         MR. YEAGER:  I would keep it the same as the other

10:13AM 20    defendants, your Honor.

21         THE COURT:  Is that okay with you, Mr. Lazarus?

22         MR. LAZARUS:  Of course, your Honor, yes.

23         MR. YEAGER:   The point I'm making is, as with

24    Mr. Babich yesterday, we did not make that objection, and I

25    don't think we should make the objection with regard to

1 | Mr. Burlakoff.

2 | THE COURT:  Well, it wasn't part of Mr. Babich's

3 | situation because he pled to the mail wire fraud.

4 | MR. YEAGER:  I think it was with regard to -- well,

5 | I'm sorry, if I'm wrong on that.

6 | THE COURT:  We doubled his fine range because of the

7 | two counts.

8 | MR. YEAGER:  Then I withdraw that, your Honor.  I

9 | apologize, I should have left that with what Mr. Lazarus said,

10:13AM 10 | I apologize.

11 | MR. WYSHAK:  So as long as probation is fine with it,

12 | we will waive those two points, your Honor.

13 | THE COURT:  Both points?

14 | MR. WYSHAK:  Yes.

15 | THE COURT:  I think Mr. Lazarus just waived it, and

16 | Mr. Yeager unwaived it.

17 | Ms. Golus, what is your view on this?

18 | PROBATION OFFICER:  No, I mean I left the calculations

19 | in because he did plead to it, so I do have the revised

10:14AM 20 | calculation.  I do agree that it has happened in other cases

21 | based on other defendants have had it vacated, so I do have the

22 | math, if you decide not to count the drug group.

23 | THE COURT:  I hope I have the math, too.  I'm going to

24 | go through it, and you can correct me when I get it wrong.

25 | MR. LAZARUS:  Just to be clear, we think you should

1    waive the two points and you should use the $250,000 maximum

2    fine.  I think just as a matter of law, *Southern Union* would

3    not apply to Mr. Babich or to Mr. Burlakoff, but we're not

4    asking you to change your position based on that.

5            THE COURT:  This is how we come up with these jokes

6    about how many lawyers it takes to screw in a light bulb,

7    that's how these jokes get started.

8            MR. LAZARUS:  Thank you, your Honor.

9            THE COURT:  Then the defendant's objection 10 has to

10:15AM 10   do with the drug quantities, which I think is now mooted by the

11   discussion we just had.

12           MR. VIEN:  I agree with you, your Honor.

13           THE COURT:  Are there any other objections that anyone

14   wants ruled on, any specific objections?

15           MR. WYSHAK:  No, your Honor.

16           MR. VIEN:  No, your Honor.

17           THE COURT:  Are you ready, Ms. Golus?

18           PROBATION OFFICER:  Yes.

19           THE COURT:  That is based on those rulings, a base

10:15AM 20   offense level of 6 plus 20 points for the dollar loss, 2 points

21   for more than 10 victims, 2 points for the reckless disregard,

22   4 points for the role, minus 3 points for acceptance of

23   responsibility, which gets us to a 31.

24           PROBATION OFFICER:  Yes, your Honor.

25           THE COURT:  And the 31, his zero criminal history

1    points, which puts him in criminal history category I.  That

2    results in a guideline range of 108 to 135 months.

3         PROBATION OFFICER:  Yes.

4         THE COURT:  Supervised release range of 1 to 3 years,

5    a fine range of $30,000 to $300,000 under the guidelines, but

6    we're capping it at 250,000 based on the prior discussion, $100

7    special assessment, restitution and forfeiture will be ordered

8    in an amount to be determined.

9         PROBATION OFFICER:  I agree those are correct, your

10:16AM 10   Honor.

11        THE COURT:  Government?

12        MR. WYSHAK:  Yes, your Honor.

13        THE COURT:  No, I'm just asking if you agree with my

14   math.

15        MR. WYSHAK:  Yes.

16        MR. VIEN:  We agree, your Honor.

17        THE COURT:  Okay.  Now, I'll hear from Mr. Wyshak.

18        MR. WYSHAK:  So, your Honor, we're here today

19   obviously to sentence Mr. Burlakoff, but in connection with the

10:16AM 20   sentencing, the government has made a motion pursuant to

21   Section 5K1.1.

22        THE COURT:  Which I granted.

23        MR. WYSHAK:  Yes, under the Sentencing Guidelines.

24        So, in support of the government's motion, I'd like to

25   make a few remarks.  First off, as the Court noted yesterday,

1    Mr. Burlakoff was the first defendant of this seven to come

2    forward and plead guilty.  He pled guilty to the charges.  He

3    didn't negotiate a plea agreement, agreed to cooperate with the

4    government in return for the government making the motion.

5         He fully accepted responsibility for his conduct, and,

6    quite frankly, I believe that he changed the entire complexion

7    of this case.  I think Mr. Vien will probably argue that if it

8    weren't for Mr. Burlakoff, there wouldn't be convictions in

9    this case.  I'm not so sure I agree with that, but I definitely

10:17AM 10   agree that his cooperation markedly changed what happened in

11   this courtroom and markedly affected the verdicts in this case.

12        He didn't wait until the last minute.  He began

13   negotiating with the government at least six months prior to

14   the trial of this matter.  He went through a series of

15   proffers, and eventually we arrived at a point where he came

16   forward and pled guilty.

17        After the government was satisfied that he was being

18   truthful and candid, and I also think that he deserves credit

19   for Mr. Babich coming forward.  I said yesterday that

10:18AM 20   Mr. Babich had engaged in some preliminary discussions with the

21   government about cooperating, but it wasn't until Mr. Burlakoff

22   came forward and cooperated that, I think as the Court noted

23   yesterday, Mr. Babich realized that the handwriting was on the

24   wall, and he also agreed to cooperate, and I think between the

25   two of them, their testimony was so compelling that it

1    virtually guaranteed guilty verdicts in this case.

2         I have sat with Mr. Burlakoff for countless hours in

3    preparing, taking his proffers, preparing him to testify and

4    subsequent to the verdicts in this case, as we noted in our

5    motion, he has met with over 11 other prosecutors' offices.  I

6    think of those 11, 10 of them are other federal districts that

7    are investigating and prosecuting matters connected to this

8    particular case.

9         I believe that in some of those districts, they've

10:19AM 10   obtained guilty pleas from certain defendants, and in the

11   Southern District, they actually went to trial against one with

12   doctor and obtained a guilty verdict.

13        Even though Mr. Burlakoff did not testify, he sat with

14   the prosecutors in the Southern District for three days

15   assisting them in preparing their case, so I believe he's

16   responsible for other results across the country, and I expect

17   that he will continue to cooperate and perhaps may testify at

18   trial in other districts.

19        THE COURT:  Is it your intention to file another

10:20AM 20   motion?

21        MR. WYSHAK:  Again, your Honor, as we stand here

22   today, it's not.  I don't believe that I have any basis to file

23   a Rule 35 at this point, but it could occur.  It is a

24   possibility that in the future if he provides substantial

25   assistance in another case, the government may file a Rule 35,

1    but what I really wanted to say to you is having spent dozens,

2    if not over 100 hours with Mr. Burlakoff, I have found him to

3    be incredibly remorseful for the conduct in which he has

4    engaged.

5         He has aggressively tried to make amends for that

6    conduct in terms of trying to be helpful to other prosecutors'

7    offices, and I know yesterday you were informed that he has

8    spoken to members of the media, and I also credit him with

9    essentially admitting what he had done, the scope of his

10   involvement in this conspiracy, and I believe that it is

11   genuine, that he genuinely wants to let the public know how bad

12   this was, and he intends to inform the public so that what

13   happened in this instance should never happen again.

14        Clearly, the significance of this prosecution can't be

15   understated.  I think it was national news, certainly probably

16   one of the most significant prosecutions of a pharmaceutical

17   company where essentially the entire management of the company

18   has been prosecuted, and, of course, a most significant

19   contribution that Mr. Burlakoff made was his ability to provide

20   direct testimony about the involvement of John Capoor, who,

21   again, as I stated yesterday, we view as the most culpable

22   party in this case, but not only, unlike Mr. Babich, who didn't

23   have a lot of information about the people in the field,

24   Mr. Burlakoff was able to provide direct testimony about all of

25   the other defendants and their participation in the criminal

1   conspiracy, and even though I've heard each one of them come

2   before the Court and fail to accept responsibility and try to

3   minimize their conduct, there is no way people participate in a

4   conspiracy for year after year after year and don't have the

5   same degree of culpability or level of involvement as

6   Mr. Burlakoff.

7        Yes, he was in management, yes, he was in Arizona, he

8   wasn't out in the field, but I don't think that there's a great

9   degree of difference in the culpability of some of his managers

10:24AM 10   as for himself, so he provided critical evidence in the

11   prosecution of the case.  As you know, it's almost impossible,

12   if not -- it's very difficult, if not impossible, to try a

13   conspiracy case without having some member of the conspiracy

14   testify.

15        It's very difficult to get into the minds of other

16   people without having somebody who is sitting at the table, and

17   Mr. Burlakoff provided that kind of insight into what was

18   happening at corporate headquarters in Arizona as well as what

19   was happening in the field.

10:24AM 20        I've done a lot of these 5K motions, and at the end of

21   the day, although Mr. Burlakoff certainly deserves punishment

22   for his crime, and the government is not here to recommend no

23   punishment, I think the societal interests of individuals like

24   Mr. Burlakoff coming forward in this kind of case, a white

25   collar crime case, where most white collar criminals, as I'm

1   sure you know, tend to rationalize their conduct and have a

2   very hard time with accepting responsibility.

3        It's very important what he did in this case.  It's

4   very important what he did in regards to being able to bring us

5   into the boardroom of Insys Therapeutics, and I believe that

6   those societal interests in rewarding an individual, like

7   Mr. Burlakoff, who comes forward to assist the government in

8   unraveling a case of this significance is a more important

9   consideration for the Court than the particular issue of his

10:26AM 10  individual punishment.

11       And I've done this before, and I agree sometimes you

12   have to hold your nose to do it, and I've done that.  This may

13   be one of those cases, but I think that the Court must

14   vindicate the interests of society at large and vindicate the

15   issues contemplated by Congress in the Sentencing Guidelines to

16   decide that it's more important to send a message to society at

17   large, to the defense bar, to other criminals who may be

18   thinking about cooperating, it's more important to send that

19   message than it is to punish this individual.

10:27AM 20       And, as I said, we're not recommending a sentence of

21   no punishment, we're recommending a 20-month sentence in this

22   case.

23       As I said, yesterday, you know, although this is an

24   unusual situation for the government, generally cooperators are

25   sentenced after the individuals against whom they've testified.

1   We don't know what the sentence of John Capoor may be, but in

2   terms of proportionality, we believe that he deserves a

3   60 percent reduction from what you may sentence Mr. Capoor to.

4       That's been the thought process.  I think it was

5   indicated in our original sentencing recommendations where we

6   were following the guidelines.  We arrived at our

7   recommendation for Mr. Burlakoff based upon approximately 60

8   percent discount, which was approved by our substantial

9   assistance committee.

10:28AM 10       This was not meant to criticize, but I fear that

11   yesterday's sentence for Mr. Babich did not send the message

12   that I think needs to be sent with regards to people who

13   cooperate with the government, especially in this kind of case,

14   so I am implore you to sentence the defendant consistent with

15   the government's recommendation of 20 months.  Thank you.

16       THE COURT:  Let me just respond to something you said,

17   Mr. Wyshak.

18       MR. WYSHAK:  Sure.

19       THE COURT:  What I wrestle with in terms of messaging,

10:29AM 20   I fully credit everything you say about how important it is to

21   encourage people to come in and cooperate, and, obviously, it's

22   a much easier situation when somebody closer to the bottom of

23   the food chain cooperates and you get to come in here and say

24   they were less culpable than these other people and they

25   cooperated.  That's an easy one, right, but in this case, I sat

1    through this trial, and I view -- and I agree with you, it was

2    an important case to bring, and the shock waves that it sent

3    through the pharmaceutical industry were important and

4    certainly were worthwhile, but I view Mr. Capoor, Mr. Babich

5    and Mr. Burlakoff as the three most responsible for the conduct

6    here, and if you had brought a case only get those three, the

7    prosecution would have been a success for all the same reasons

8    that we've already discussed, so you talk about the message of

9    encouraging cooperation, and I hear that, but I worry about the

10:30AM 10   message that you can be the top of the criminal food chain,

11   recruit all these people into the organization, maximize your

12   profits on it, and then turn around and cooperate against those

13   same people and drop yourself right to the bottom as if all

14   that conduct hadn't happened, so I know you think I didn't go

15   low enough on Mr. Babich yesterday, and you may well think the

16   same thing when we're done today, I don't know, because I

17   haven't heard from the other side yet, but given where I would

18   have been on him without the cooperation, and even where I

19   started before I came out onto the bench yesterday, it was a

10:30AM 20   very substantial decrease.  He would have gotten significantly

21   more without the cooperation.  I feel that the cooperation was

22   fully credited, and I don't mean to discourage cooperation, I

23   don't mean to send a message that cooperation isn't important,

24   but I do mean to send the message that you can't do the very

25   worst thing and then erase it by cooperating.

1          MR. WYSHAK:  I understand that, and that's why I say

2     sometimes you have to hold your nose and credit it, but --

3          THE COURT:  I did hold my nose.

4          MR. WYSHAK:  Okay.  But I would say that the primary

5     objective of this prosecution, obviously, was to get to the top

6     of the pyramid with Mr. Capoor.  I'm not so sure that the

7     prosecution, Mr. Burlakoff, Mr. Babich and Mr. Capoor would

8     have gotten us all the way to the top.  Nobody knows that for

9     sure, but I think that the cooperation of Mr. Burlakoff and

10:31AM 10    Mr. Babich did get us there, and I think it was very important

11    in this case to get there.

12          THE COURT:  When this case started, Mr. Babich and

13    Mr. Burlakoff were 1 and 2 on the indictment.  They were the

14    top of the pyramid, and I hear what you say, and I am going to

15    reward Mr. Burlakoff for his cooperation but perhaps not to the

16    extent that you've asked.  I don't know that, but, you know,

17    they were the perpetrators of this conduct.  I mean, it was

18    them.

19          He came in, it took him a long time, he had to be

10:32AM 20    indicted.  He didn't start off with his cooperation very well,

21    which you haven't referenced today, appropriately so, given

22    what your role is, but I just wrestle with -- I mean, it is

23    your job in this proceeding to fully go to bat for the

24    cooperators, and you've done your usual excellent job on that,

25    but my job is something different, and that's what I'm sort of

1    trying to wrestle with, that my punishment needs -- I'm not on

2    his team, like you are right now, right, I'm on a different

3    team.

4         MR. WYSHAK:  I'm not on his team right now, I'm on the

5    government's team, and having done these cases for as long as I

6    have done them, I realize that, as you know, when you were in

7    the office, I mean, there's a lot of cases we don't bring that

8    are important and should be brought, but you just can't get

9    there because the defense bar circles the wagons and nobody

10   cooperates, and that happens in this district.

11        I'm sure it happens elsewhere in the country, and I

12   think that at least in this district, it is a very important

13   message to send, and, you know, obviously, I've done a lot of

14   organized crime cases.

15        This is not an organized crime case, but I think some

16   of the principles are the same that if you really want to deter

17   this kind of conduct, you have to take out the top, and I'm not

18   so sure that that would have been the result absent the

19   cooperation of Mr. Babich and Burlakoff, and I think that is a

20   great benefit to society, and I think that in terms of we

21   recommended 24 months for Mr. Babich.

22        I think Mr. Burlakoff deserves a lesser sentence than

23   Mr. Babich, and I believe that because I believe he was first

24   in the door.  I believe his testimony was much more compelling

25   than Mr. Babich's testimony.  He covered a much greater area,

1    and he was not the CEO, he was in the food chain, in the

2    pyramid.  He was further down than Mr. Babich, and, again, the

3    nature and extent of his cooperation subsequent to the verdicts

4    in this case has been remarkable, and although Mr. Babich has

5    met with other federal prosecutors, has not been to the degree

6    that Mr. Burlakoff has, and I think it's really Mr. Burlakoff's

7    testimony in other cases in other districts or his cooperation

8    that since he's the one has been out in the field dealing with

9    doctors and other members of Insys, he has more to offer.

10:35AM 10       Sometimes that's the irony of being central to the

11    criminal conspiracy is at the end of the day, you have more to

12    offer, and as a result you get a greater benefit, but I do

13    recommend the 20 months.  I do recommend a lower sentence than

14    the Court gave to Mr. Babich.

15       THE COURT:  Well, he may have done a great societal

16    good, but that was preceded by a great societal evil.

17       MR. WYSHAK:  No, no doubt.

18       THE COURT:  Mr. Vien.

19       MR. VIEN:  Your Honor, obviously, I'm going to address

10:36AM 20    Mr. Burlakoff's cooperation, and I'll do it without repeating

21    Mr. Wyshak, but there's another issue that I want to discuss

22    first under 3553, we're required to talk about the offense and

23    the history and characteristics of the defendant, so I'd like

24    to the spend a couple moments before that, and I don't mean to

25    digress immediately back to cooperation, but Mr. Burlakoff and

1    Mr. Babich were Number 2 and 3 on the indictment because the

2    government, I believe, didn't feel it had sufficient evidence

3    to charge Mr. Capoor.

4         When they did, although he was added to the

5    indictment, they didn't change the order of the defendants, but

6    clearly Mr. Capoor was at the top.

7         In addition, I know that the government offered all

8    the defendants the opportunity to testify on behalf of the

9    government and cooperate, and had they cooperated to the extent

10:37AM 10   Mr. Burlakoff has cooperated, I believe that the government

11   would be here recommending much lower sentences for those

12   people because at least some of them were less culpable.  All

13   of them were less culpable in one way or the other because the

14   criminal activity was limited in some way.

15        Mr. Gurry was in insurance fraud but wasn't out in the

16   field, so I just don't want to let those things lie before I

17   circle back to his cooperation, but, first, as far as his

18   personal characteristics, Mr. Burlakoff grew up in I think what

19   most of us would consider a middle class home.  He wasn't

10:38AM 20   affluent, but from the outside, it would be easy to see or view

21   it as a normal American middle class home but was anything but

22   that.

23        It was not normal, and it was not healthy, and I don't

24   want to speak ill of the dead, but the reason it was unhealthy

25   and the reason it was so horrible was the defendant's older

1    brother, who was violent and mentally ill.

2         And I know Mr. Burlakoff's family is in court, and I

3    know that you've reviewed the PSR and our sentencing memo very

4    carefully, so I don't want to go into gruesome detail about the

5    abuse that Mr. Burlakoff suffered at the hands of his brother

6    growing up, but I know the other day when you spoke about

7    Ms. Lee's situation, I know you said it's not about gender in

8    substance, and I don't have the exact words, and I'm not trying

9    to put words in your mouth, it's not about gender, it's about

10:39AM 10   the specific characteristics of what happened to Ms. Lee.

11        And I'm very sympathetic to what brought her here, if

12   you will, and I respectfully suggest, and I know that's a buzz

13   word, but I say it, that you should be equally sensitive to

14   Mr. Burlakoff and what he suffered, and, as you know, that

15   after all these years of abuse that while Mr. Burlakoff was

16   working at Insys, his brother killed his brother's wife and

17   then committed suicide by causing police officers to shoot him

18   and kill him.

19        These are very traumatic events for Mr. Burlakoff, and

10:40AM 20   it gives a little bit of window into why he had such impulse

21   control and has suffered so greatly throughout life, and when

22   we see him on the witness stand having trouble controlling

23   himself, and when he's acting so crazily at times and why he

24   was such a wild boy at Insys, it's not an excuse, but I think

25   we have to go back to his upbringing and see what happened.

1     Arguably, it was middle class, but middle class isn't the end

2     of the story, and he had a horrific family life.

3          In addition to that, your Honor, he became quite ill

4     in high school, as you know, from the PSR without belaboring

5     the details, and he's not a defendant who comes to the court

6     and says I suffer from depression and anxiety, and the Court

7     asks, Well, when did you start?  After I got indicted.  That's

8     not Mr. Burlakoff.

9          Mr. Burlakoff has been struggling with his mental

10:41AM 10  state since at least the age of 16 when he was put on

11    antidepressants and anti-anxiety pills.

12         So, I think what you're dealing with is not a typical,

13    greedy, noncompliant pharma rep and supervisor, you're dealing

14    with a very flawed man who was traumatized early in life in a

15    way that, thank God, most of us are not, and I respectfully

16    request that you take that and give that serious consideration,

17    and I know you will in addition to his cooperation.

18         I've heard about some of the other sentences, and I've

19    attended some of them, and you're not going to hear

10:42AM 20  Mr. Burlakoff stand up and say I should have been more vigilant

21    or I was stuck between a rock and a hard place, and keep in

22    mind in that regard, if Mr. Capoor wasn't 100 percent

23    enthusiastic about what Mr. Burlakoff was doing, he or

24    Mr. Babich could have fired him any time, any time they wanted,

25    but I've heard you say to other defendants who said, argued

1   that they're a good person, and you say, you know, I really

2   haven't seen it.

3        Some of them, sure; some of them, no.  Mr. Burlakoff,

4   we've seen flashes of the person he is.  He went to college,

5   came out with a counseling degree, went to grad. school and got

6   a job doing what he was made to do.  He was a high school

7   counselor, he was a basketball coach, and he touched many

8   lives, and he did a great job, and we've submitted letters from

9   some of the children, that he's touched them, and later how he

10:43AM 10   helped them, even the most troubling.

11        It wasn't about basketball for Mr. Burlakoff, it was

12   about basketball being a device to educate and help kids, and

13   he did that, and, frankly, he should have never left.

14        Life would have been hard economically, but he should

15   have never left that.  Instead, he jumped into the pharma

16   industry where his crazy personality was a benefit, where his

17   lack of impulse control was a benefit, with his maniacal work

18   habits, they were all benefits, and he could find the doctors

19   who were corrupt or corruptible, and after Insys, what did he

10:43AM 20   do, he went back in to coaching and trying to help people.

21        So I'm not saying everything Mr. Burlakoff did in his

22   life was motivated by trying to help people.  He wanted to make

23   money.  He wanted to be a big success.  How much is that tied

24   to his brother and his relationship with his brother going on,

25   I don't know, but I suspect a lot of it was, but, in any case,

1   I want the Court to appreciate, and I know the Court does, that

2   Mr. Burlakoff is not all about being the person he was at Insys

3   flying around the country and paying off doctors.

4          He's done a lot of good in his life, and I think it's

5   a real tribute to Mr. Burlakoff that his family has stayed with

6   him.  Not only is he very close with his niece, who lost her

7   father, Mr. Burlakoff's brother, but he's incredibly close to

8   his own children, as you've seen from the letter that you read

9   and were touched and moved by.

10:44AM  10          In addition, she may be a saint, but his wife has

11   stayed with Mr. Burlakoff.  They have a solid marriage.  It's

12   amazing to an outsider, but she's stayed loyal to him, his

13   children have stayed loyal to him, and some way or another,

14   that's a tribute to Mr. Burlakoff because they know him well

15   and they see the good in him.

16          In addition to all that, four of his friends have

17   flown in to be -- they're in court today to support him.  Some

18   have written letters, some haven't, but having them come from

19   as far away as California, and I don't want to name their

10:45AM  20   names, I know there's a lot of press, and I don't want to

21   embarrass them, but people care about Mr. Burlakoff, and he's

22   formed relationships, and he's a good person who's done good.

23   He's done bad, but there is a good side to him, and he has in

24   addition to his cooperation done good things in his life.

25          So, anyway, that on its own, your Honor, just like I

1       think with Ms. Lee, although she had a horrible life and

2       upbringing and was a victim in some ways, and her experience

3       hardened her, it's a different story, but it's not a completely

4       different story with Mr. Burlakoff, so regardless of his

5       cooperation, I respectfully request that you consider his

6       personal history and characteristics and the incredible trauma

7       he suffered throughout his life in forming and imposing the

8       correct sentence on him, so it's more than just his

9       cooperation, which I would hope you will take into account and

10:46AM 10      give Mr. Burlakoff a low sentence.

11              Regarding his cooperation, Mr. Burlakoff was the

12      Burlakoff of Insys Pharmaceuticals.  He fired his first set of

13      lawyers, he went into the government and tried to talk his way

14      out of it without a lawyer.  Finally, he got a new legal team,

15      and as Mr. Wyshak said, it's been my impression that he is

16      sincerely sorry for what he did, and what he did is he

17      cooperated as soon as it was practical.

18              What do I mean?  You say he waited a long time.  Yes,

19      he did wait a long time, but, your Honor, what you did in one

10:47AM 20      of the early hearings in this case, you pointed out to the

21      government how difficult it would be to try the I think it was

22      the first superseding indictment and how there were

23      conspiracies within conspiracies, and it was impossible to even

24      charge a jury.

25              It's very difficult, as you, given your history,

1   understand to have someone walk in and plead guilty to what the

2   Court believes was a flawed or at least troubling indictment.

3         The government heeded your words, they fixed the

4   indictment, I know we go back and forth, and maybe it's not

5   perfect, but it was a heck of lot better, and it was triable

6   based on their revisions and the second superseding.

7         When the second superseding came out, that's when

8   Mr. Burlakoff came in, so is it his fault for not coming in and

9   pleading guilty to the earlier indictment?  It's probably my

10  fault more than his fault because as soon as the indictment was

11  what I'll say fixed, Mr. Burlakoff came in and pled guilty to

12  it.  He said in part, obviously, he's motivated by the 5K,

13  obviously, he's motivated by trying to stay out of jail, but he

14  wanted to make up for what he did, it finally hit him what he

15  did and his role in what I'll call this evil company, and he

16  tried to make up for it, and he said I don't want a plea

17  agreement, I just want to go in and say I did it because that's

18  what I did, and that's what he did.

19        He didn't negotiate a different charge, he said I want

20  to plead and get this over with and start cooperating.  As

21  Mr. Wyshak said, he did cooperate, he cooperated extensively,

22  and I won't repeat, as much as I want to, I won't repeat

23  everything that Mr. Wyshak said, but he cooperated first, he's

24  never parsed words.

25        His testimony, and I've seen some of the sentencing,

1    and I think you appropriately put great emphasis on that 8:30

2    meeting because those were the people that were controlling the

3    company, and those were the people at the boardroom and the

4    decision-makers, some of who got very, very rich from their

5    crimes, and Mr. Burlakoff was the best person to put you at

6    that 8:30 meeting, and he caused Mr. Babich to negotiate a plea

7    agreement and a charge and plead guilty, so I don't want to get

8    into a dispute with Mr. Wyshak about whether or not the

9    government would have won the case without Mr. Burlakoff, but

10:50AM 10   at least as far as Mr. Capoor, I think we all agree that they

11   would have had a much, much more difficult trial against

12   Mr. Capoor had they not had Mr. Burlakoff and Mr. Babich, and

13   that's very, very important to keep in mind.

14        I also note that the Court in its post-verdict rulings

15   and memos relied extensively on Mr. Burlakoff's testimony.  I

16   know the legal standard is different, but, nonetheless, you

17   relied on him, just like it appears the jury relied on him and

18   believed him, and his testimony was dramatic.

19        You saw it yourself.  He has control issues, but his

10:51AM 20   behavior and the type of person he is was evidence against

21   Mr. Capoor himself because he's the guy that Mr. Capoor wanted

22   running around the country and bribing doctors, so when the

23   jury saw what a maniac he was, they also saw, I get it.

24        What compliant, honest man would hire Mr. Burlakoff to

25   work in a highly regulated industry and have one-on-one

1    conversations with doctors and be sure he wouldn't cross the

2    line.  He did what he did, he is who he is, but it is exactly

3    who Mr. Capoor wanted, and it's exactly what he wanted him to

4    do.

5            As Mr. Wyshak pointed out, and that was a point I want

6    to emphasize without repeating everything Mr. Wyshak said.

7    It's important.  We always talk about general deterrence, but

8    we have the opportunity to send a message to other people in

9    the pharma industry.  We've all seen the history of pharmacy

10:52AM 10    cases in Massachusetts and other districts, they're very

11    difficult to prove because they're nuanced, and you don't have

12    an insider like Mr. Burlakoff.

13            And a low sentence, a very low sentence for

14    Mr. Burlakoff, given his personal history and his cooperation,

15    would send a message to those people that they should cooperate

16    because many times it's easier not to cooperate.

17            Well, if I'm on the fence and I'm going to go to jail

18    anyway, but I might go a little bit less if I cooperate, but

19    then I'm excluded, I lose all my friends, I've lose all my

10:53AM 20    business connections, I have no idea what I'm going to do when

21    I get out, why don't I just plead guilty or go to trial and

22    roll the dice.

23            It's like in the old cases we all did, drug

24    conspiracies, it's better for the person in the long run, it's

25    easier not to cooperate so they don't lose their friends,

1    they're not excluded from their social group, they don't have

2    to look over their shoulder for the rest of their life, and if

3    they only have to do a little bit of time, and they're going to

4    do almost that time anyway, then what's the motivation?

5          And I think we agree, I think we all agree that it's a

6    societal good to unearth these cases, and there are many, many

7    people in the pharma industry right now looking at what happens

8    with Mr. Burlakoff who cooperated, so all I'm saying is he

9    should get credit for what he did in this case because he

10:54AM 10   helped convict the evil billionaire, but it's bigger than this

11   case, and that's I think what Mr. Wyshak said.

12         It will also make it harder for corrupt billionaires

13   and other multi-millionaires to insulate themselves from their

14   own criminal conduct.

15         If you only are going to deal with one or two people

16   and you, yourself, aren't going to be out in the field and

17   you're that corrupt billionaire, then really all you have to

18   worry about is those two people we have constant contact with,

19   cooperating, because you've insulated yourself from everyone

10:55AM 20   else, so if we want to bring those people to justice, giving

21   Mr. Burlakoff a light sentence will increase the chances of

22   that happening.

23         But, in any case, I've probably gone on too long.  I

24   know Mr. Burlakoff wants to address the Court.  I appreciate

25   the government's 5K.  I think you should go even lower based on

1    his personal characteristics and based on his really

2    exceptional cooperation.

3            In our motion, I say probation.  I don't think that's

4    crazy.  I think Mr. Burlakoff has been through a lot.  He has a

5    lot of issues that he has to deal with, obviously.  He has a

6    9 million civil judgment against him, yet he's done some good

7    in his life.  He tried to make up for what he did in this case,

8    and he has a loving and caring family that he wants nothing

9    more than to get back to them and try to be the man that he was

10:56AM 10   and should have been all the time.

11           Thank you.  I know Mr. Burlakoff wants to speak.

12           THE COURT:  Mr. Burlakoff, you can sit or stand, just

13   make sure there's a microphone near your mouth, please.

14           THE DEFENDANT:  Your Honor, we are here today because

15   of what I did.  I committed the crimes.  It was my fault.  I

16   want to begin by apologizing to the Court, the government, my

17   family, and the people who were wrongly subscribed substances.

18   I have let so many people down.  I've embarrassed and

19   disappointed my wife and children tremendously.  I'm ashamed

10:57AM 20   for all that I did.

21           I read the letters that several victims submitted to

22   the government, and I am so sorry to have had a role in their

23   addiction.  To an extent, I can try and empathize with their

24   pain, fear and torment.  I saw my older brother spiralling out

25   of control because of his own struggles with addiction and

1   struggled with addiction throughout his whole life.

2   Drugs made him aggressive and violent.  My parents and

3   I walked on eggshells.  We lived in constant fear of his next

4   explosion.  We lived modestly together in a house, though it

5   was never a real home.

6   I always desperately wanted to be a big success, and

7   the loss of my brother and his wife focused me more than ever

8   on doing just that, no matter how.  I didn't think about who at

9   Insys were hurting or how unethical what we were doing was.

10:58AM 10   The only thing I thought about was how could I best keep up

11   with the fast and furious pace necessary to get ahead.

12   I vowed I would work obsessively in the hopes of

13   receiving the praise, accolades and money I was desperately

14   seeking.  I would once again find a way to fill the emptiness

15   that seemed to always be a part of my life.  That was wrong.  I

16   see that now.  Getting indicted was a shock, and I initially

17   thought I could talk my way out of it and deny what I and

18   others at Insys had done.

19   I finally came to my senses and realized the only way

10:59AM 20   to move forward was to go to the government and finally tell

21   them the truth and plead guilty to what I did.

22   I didn't negotiate or ask for a deal.  I wanted to

23   plead to try to make up for what Insys and I did by

24   cooperating.  I did my best to cooperate fully and testify

25   truthfully.  I told the truth no matter what, when or who asked

me.

My emotions sometimes got the best of me in court, but I did try my best.  I keep trying to make up for what I did.  A forgiving man for my past employment history has given me a second chance working for his company, and I'm doing my best to prove I'm worthy of the opportunity he's giving me.

I'm trying to be what I should have been my entire life, an ethical, humble and law-abiding man.  Besides working a full-time job, I'm working with a team that creates educational content for people facing time in prison.  Administrators in state and federal prisons across the country use these courses to teach and inspire people.

Through these courses, I proactively reveal my own personal story.  I share the ways that introspection helped me understand just how important the acceptance of responsibility truly is.

I conclude every interaction I have with the greatest emphasis being that once I truly came to terms with what I did, then and only then was I able to even begin the healing process.

In closing, I ask that you please give me the chance to get back with my family, get to work, and be the person I should have been all along.  You'll never see me again, your Honor.  Respectfully, Alec Burlakoff.  Thank you.

THE COURT:  All right.  Another difficult Insys

1   sentencing.  None of these have been easy.  I appreciate your

2   words, Mr. Burlakoff and some of the letters, I mentioned this

3   before, but particularly the letters from your children were

4   very powerful, and I sit here, and I can't help but think of

5   you as a Dr. Jekyll and Mr. Hyde.  You know, you've done some

6   good things in your life, and I think you and I'll say

7   Mr. Rowan are the two that not only did good things in your

8   life for your own family and people you knew but went beyond

9   that circle to do good things for other people as well.

11:03AM 10       When I look at -- I can't help but look at relative

11  culpability in this case, and I do put you and Mr. Babich and

12  Mr. Capoor right at the top of the food chain on that, and I

13  know what the government is used to is cooperators getting the

14  lower sentences of anybody else, but in this case, I just view

15  your relative culpability as so serious that it's hard for me

16  to do that.

17       I don't mean to minimize the value of your

18  cooperation, but just given the role that you played in that,

19  it's hard for me to get below what I've done for everyone else,

11:04AM 20  although I agree with the government that that's generally the

21  way these things should go.

22       The fact that it hasn't gone to date that way in this

23  case is not a reflexion of sentencing order because I thought

24  about these things before I come out here, it's just my

25  assessment as fair as I can be trying to measure the value of

1    the cooperation, which was significant in your case, with the

2    harm done, which was also significant in this case.

3          Anyway, my job here is to figure out a reasonable

4    sentence for Mr. Burlakoff.  I must consider and I have

5    considered the advisory guideline sentencing range, the nature

6    and circumstances of the offense, his personal and criminal

7    history and characteristics, the need for the sentence to

8    reflect the seriousness of the offense, promote respect for the

9    law, provide just punishment, adequate deterrence, by which I

11:04AM 10   mean general and specific, to avoid unwanted sentencing

11   disparities, I have also considered as well both the government

12   and Mr. Vien have asked the balance of the 18 U.S.C., 3553(a)

13   factors.

14         At the end of the day, Mr. Burlakoff, I suspect that

15   I'm going to give you a longer sentence than you want or what

16   the government wants, but that being said, I still see you as a

17   young man, and I have confidence that I won't see you again.  I

18   hope I won't see you again.

19         You're going to be on supervised release for three

11:05AM 20   years really so that probation can monitor your financial

21   obligations, so if you do, to put it colloquially screw up, you

22   and I will end up back in this courtroom together, and I take

23   you at your word that that won't happen.

24         It's funny because you talk about the lure of money,

25   and I do think that this was an offense of greed, but when I

1   think about you, I think more about you loving the energy and

2   the pace and all of that being sort of as important as the

3   money, and I hope you get that under control because I think

4   that what you have been able to accomplish with kids as a coach

5   and as a teacher, as Mr. Vien said, was really where you should

6   have been and where you should have stayed, and, you know,

7   there's other people in this case that their skills, I don't

8   know what they're going to do next.  I think that they're

9   bright, talented people, and I hope they figure out something

11:06AM 10   to do, but I think in some ways you have a clearer path maybe

11   not so financially lucrative but hopefully more satisfying.

12   I fully credit the fact that you were the first one to

13   cooperate.  I fully credit that you were the one that probably

14   at the very least sealed the deal with Mr. Babich.  I don't

15   know if he would have come in anyway, but I think your

16   cooperating probably pushed him to that.

17   You're the one that's going to have to live with the

18   fact that some of these other people got swept into this

19   because you recruited them into the organization.  In some

11:07AM 20   ways, that's a reflexion of the good and the bad of

21   Alec Burlakoff, right, you're trying to help your friends by

22   bringing them in, and, on the other hand, what you did was

23   bring them into a situation that ended up being harmful to

24   them.

25   When Mr. Wyshak and others from the government,

1    Mr. Yeager have talked about the importance of what you and

2    Mr. Babich did in this case, I honestly don't know how this

3    case would have gone without the two of them cooperating.  I

4    was never really sure how the government visioned it would be

5    proven without the two of them testifying.

6            So they may think they could have done it without you.

7    I'm not really sure they could have, so I fully credit that,

8    but, again, I come back to the relative culpability, and I just

9    can't see my way down to a probationary sentence or even as

10   long a sentence as the government has asked for, so you are

11   going to be incarcerated for, I'm accepting the government's

12   representation that they think you should get less time than

13   Mr. Babich.

14           I'm not 100 percent sure that I agree with that, but

15   the societal good and the importance for them to have some

16   credibility with people that come in and cooperate, I'm also

17   trying to recognize, so although I can make a pretty good

18   argument for giving more to you than Mr. Babich, I'm going to

19   accept the government's calculus on this by virtue of the fact

20   that they were closer to it than I was and by the fact that I

21   think your cooperation was critically important to be able to

22   convict these other people, so you are going to prison.  Your

23   family will weather the storm.

24           I know that you, of all people, will find a way to do

25   some good while you are in prison, both for yourself and for

1  the other people there, and you'll come out and you'll have a

2  lot of time left to do all the things that it is you want to

3  do, and I hope that you will embrace that opportunity.

4  So, pursuant to the Sentencing Reform Act of 1984 and

5  having considered the sentencing factors enumerated at

6  18 U.S.C., 3553(a) it's the judgment of the Court that the

7  defendant, Alec Burlakoff, is hereby committed to the custody

8  of the Bureau of Prisons to be imprisoned for a term of 26

9  months.

11:09AM 10  The Court makes a judicial recommendation that the

11  defendant participate in substance abuse treatment.  Well, does

12  anyone feel he needs the substance abuse treatment?  I'm sorry.

13  PROBATION OFFICER:  He actually requested it.

14  THE COURT:  Oh, he did request it, that's right.  I

15  will make a judicial recommendation he participate in substance

16  abuse treatment while in Bureau of Prisons' custody.  I'm not

17  sure that he'll be there long enough for the RDAP program, but

18  if he qualifies, I recommend RDAP.  Mr. Burlakoff, the RDAP

19  program, if you qualify, gives you a chance to work time off of

11:10AM 20  your prison sentence and get out, I think, up to a full year

21  earlier for that.

22  Upon release from imprisonment, you'll be placed on

23  supervised release for a term of three years.  Again, it's not

24  because I feel your behavior needs to be monitored but because

25  I want some supervision over the financial obligations.

1    Within 72 hours of release from the custody of the

2    Bureau of Prisons, you shall report in person to the district

3    to where you're released.  They'll be a restitution order,

4    there will be a forfeiture order.  The forfeiture order will

5    represent the proceeds of your offense minus the taxes.  We'll

6    enter that later.  I'm not going to impose a fine because I

7    don't think the defendant has the financial ability to pay the

8    fine and the restitution.

9    While you're under supervised release, you must comply

11:10AM 10    with the following terms and conditions:  You can't commit

11    another crime; you can't unlawfully possess a controlled

12    substance; you can't unlawfully use a controlled substance.

13    You'll submit to one drug test within 15 days of release from

14    imprisonment and at least two periodic drug tests thereafter,

15    not to exceed 104 tests per year, but I will leave that wholly

16    within the discretion of probation, so if they feel you need

17    drug testing, you'll get it, but if they don't think you need

18    it, you won't.

19    You will cooperate in the collection of a DNA sample

11:11AM 20    as directed by the probation officer and comply with any other

21    standard conditions that are adopted by the Court.

22    Special conditions, you must participate in substance

23    abuse counseling as directed by the probation office, which,

24    again, can include that same testing, not to exceed 104 drug

25    tests per year.

1    What about an alcohol restriction?  Does anybody think

2    that is necessary?

3    MR. VIEN:  I don't think that's his problem.

4    PROBATION OFFICER:  Policy requires us to either

5    recommend no alcohol or this limited condition, when we're

6    recommending substance abuse treatment of any kind.

7    THE COURT:  All right.  I think that prohibiting

8    someone from drinking just sets them up for failure, so what

9    I'm going to do is prohibit public intoxication, as defined by

11:12AM 10   Massachusetts law, which is a .10 blood alcohol level.

11    You'll have to pay the balance of any fine or

12   restitution according to a Court-ordered repayment schedule.

13   You can't incur new credit card charges without the approval of

14   probation while your financial obligations remain outstanding.

15    You'll have to give probation any requested financial

16   information, and they'll be allowed to share that with the

17   financial litigation unit of the U.S. Attorney's Office, and if

18   you can afford it, you'll need to contribute to the costs of

19   evaluation, treatment and programming.  If you can't afford it,

11:12AM 20   it will be provided anyway.

21    So there's one other condition that's apparently been

22   requested by the U.S. Probation Office for the District of

23   Florida, which I view to be completely unnecessary.  Do I need

24   to impose that?

25    PROBATION OFFICER:  You don't need to impose that,

1    your Honor.

2              THE COURT:  I'm not going to impose it.  I don't think

3    it's necessary.  Special assessment of $100.  You have some

4    limited rights to appeal, if you want.  I'm sure your lawyers

5    will handle that for you.  I'm going to allow him to

6    self-surrender.  We're going to give him a self-surrender date

7    in six weeks.

8              If he hasn't been designated within the six weeks and

9    you want to ask for an extension of that time, please go ahead

11:13AM 10   and do so, and I will approve it.

11             Do you want to be housed near your family,

12   Mr. Burlakoff?

13             MR. VIEN:  Yes, your Honor.  I know you don't have a

14   lot of confidence in the judicial recommendations, but we would

15   respectfully recommend that you make one, and it appears to me

16   that FCI-Miami, which contains a camp, would be an appropriate

17   recommendation, and I understand Bureau of Prisons has to do a

18   security evaluation and may not agree that he's appropriate for

19   a camp or low security institution, but assuming they agree, I

11:13AM 20   would respectfully request a judicial recommendation of

21   FCI-Miami at the satellite camp.

22             THE COURT:  All right.  I'm going to make a judicial

23   recommendation that he be housed as close to his family as

24   possible with a specific recommendation for FCI-Miami, the

25   portion of that facility commensurate with a security

1    designation by B.O.P., and if he is deemed appropriate for a

2    camp, then I recommend FCI-Miami, the satellite camp facility.

3    Is that adequate?

4         MR. VIEN:  Thank you, your Honor.  Yes.

5         THE COURT:  Anything else from probation?

6         PROBATION OFFICER:  No, just the self-surrender date,

7    which I'm guessing is going to be March 6th.

8         THE CLERK:  March 5th, I think.

9         THE COURT:  Anything else from the government?

11:14AM 10    MR. WYSHAK:  No, your Honor.

11         MR. VIEN:  Nothing from the defense, your Honor.

12         THE COURT:  A self-surrender date of March 5th.  You

13   can ask to have that extended if he's not designated.

14   Mr. Burlakoff, I know this is not what you hoped for today, and

15   I really don't mean to minimize the value of your cooperation,

16   it's just the conduct was such that I just don't think in good

17   conscious given my responsibility to other people, the victims

18   and society in general that I can go beyond this, but I really

19   do have confidence in your ability to come through this on the

11:15AM 20   other end and be the person that you can be and sometimes have

21   been and want to be, so I truly wish you the best of luck.

22   This sentence gives me no pleasure, but it's an appropriate

23   sentence as I feel I can fashion.  If there's nothing else, the

24   case is recessed.

25

1          (Whereupon, the hearing was adjourned at 11:15 a.m.)

2

3

4                    C E R T I F I C A T E

5

6    UNITED STATES DISTRICT COURT )

7    DISTRICT OF MASSACHUSETTS ) ss.

8    CITY OF BOSTON )

9

10

11          I do hereby certify that the foregoing transcript,

12    Pages 1 through 44 inclusive, was recorded by me

13    stenographically at the time and place aforesaid in Criminal

14    Action No. 16-10343-ADB, UNITED STATES of AMERICA vs.

15    ALEC BURLAKOFF and thereafter by me reduced to typewriting and

16    is a true and accurate record of the proceedings.

17          Dated this January 27, 2020.

18

19                         s/s Valerie A. O'Hara

20                         _____

21                         VALERIE A. O'HARA

22                         OFFICIAL COURT REPORTER

23

24

25